AMERICAN LOCKER COMPANY, INC., Appellant, *v.* CITY OF NEW YORK et al., Respondents.

Argued January 4, 1955; decided March 3, 1955.

*Ralph L. McAfee, George G. Tyler* and *Albert Rosenblum* for appellant. I. Plaintiff's locker receipts are not subject to the sales tax because the furnishing of safe storage to its patrons is not a " sale " of tangible personal property within the meaning of the New York City local laws imposing the sales tax. (*Matter of Atlas Television Co.,* 273 N. Y. 51; *Matter of Kesbec* v. *McGoldrick,* 278 N. Y. 293; *United States* v. *Jin Fuey Moy,* 241 U. S. 394; *Matter of United Artists Corp.* v. *Taylor,* 273 N. Y. 334; *Howitt* v. *Street & Smith Publications,* 276 N. Y. 345; *Matter of Frissell* v. *McGoldrick,* 300 N. Y. 370; *Dun & Bradstreet* v. *City of New York,* 276 N. Y. 198; *Matter of Merchants Refrig. Co.* v. *Taylor,* 275 N. Y. 113; *Matter of Holmes Elec. Protective Co.* v. *McGoldrick,* 262 App. Div. 514, 288 N. Y. 635; *Holmes Elec. Protective Co.* v. *City of New York,* 304 N. Y. 202.) II. Although similar functions are performed by plaintiff's automatic lockers and by hand-checking rooms, the comptroller has discriminated against plaintiff by holding its receipts taxable while holding the receipts of hand-checking rooms nontaxable. III. Any doubts or ambiguities in the sales tax laws should be resolved in plaintiff's favor. IV. If under the comptroller's regulations plaintiff, as collecting agent for the city, must pay tax to the city on so-called " below-minimum " sales although it is not empowered by those regulations to collect the tax on those sales from its patrons, the result will be to impose the tax on the vendor, contrary to the Administrative Code, thus depriving plaintiff of property without due process of law, and to tax plaintiff's gross receipts twice in violation of the enabling act. (*Matter of Kesbec* v. *McGoldrick,* 278 N. Y. 293; *Cowley* v. *Fabien,* 204 N. Y. 566; *Queens Vending Corp.* v. *City of New York,* 246 App. Div. 594; *Matter of Good Humor Corp.* v. *McGoldrick,* 264 App. Div. 750, 289 N. Y. 452; *Matter of Green Co.* v. *Joseph,* 297 N. Y. 588.)

*Solomon Portnow* and *Stanley Buchsbaum* for respondents. I. The transactions come squarely within the sales tax law's definition of a " sale " as a license to use. Moreover, it is also both a transfer of possession and a license to consume within that definition. (*Robert* v. *Board of Supervisors of Kings Co.,* 3 App. Div. 366, 158 N. Y. 673; *People* v. *Dunn,* 157 N. Y. 528; *Admiral Realty Co.* v. *City of New York,* 206 N. Y. 110; *Matter*

of McAneny v. Board of Estimate & Apportionment of City of N. Y., 232 N. Y. 377; Hermitage Co. v. Goldfogle, 204 App. Div. 710, 236 N. Y. 554; Matter of United Artists Corp. v. Taylor, 273 N. Y. 334; Buckley Funeral Homes v. City of New York, 199 Misc. 195, 277 App. Div. 1096; Matter of Frissell v. McGoldrick, 300 N. Y. 370; Howitt v. Street & Smith Publications, 276 N. Y. 345; Dun & Bradstreet v. City of New York, 276 N. Y. 198.) II. The comptroller's rate schedule pertaining to " below minimum " sales does not violate the State enabling act, nor does plaintiff's obligation to pay the tax as a vendor result in any " double taxation ". (Queens Vending Corp. v. City of New York, 246 App. Div. 594; Matter of Atlas Television Co., 273 N. Y. 51; Matter of Good Humor Corp. v. McGoldrick, 264 App. Div. 750, 289 N. Y. 452; Matter of Green Co. v. Joseph, 297 N. Y. 588.)

CONWAY, Ch. J. Plaintiff is the owner of coin-controlled lockers in which the public checks baggage and other personal belongings for a period of time not in excess of twenty-four hours upon payment of a " dime " or a " quarter ", depending upon the size of the locker. The lockers, which are physically and permanently attached to each other and are manufactured so as to comprise one cabinet, viz., two, three or four lockers, as the case may be, standing one on top of the other, are placed in various locations throughout the city of New York pursuant to plaintiff's contracts with the owner or lessee of the premises on which the lockers are to be installed. As a patron approaches a given locker location, he selects an unoccupied locker, i.e., a locker which has a key in it. Because the locker is not locked when the patron approaches it, the patron can open the locker door and deposit his belongings therein without making any payment. In order to lock the locker, the patron inserts a " dime " or " quarter ", as the case may be, closes the door and turns the key, " thus locking the door from the general public as well as himself ". The key, which bears a number corresponding to the number on the locker door, permits the patron to re-enter the locker and retrieve his belongings, if he returns within the twenty-four-hour period covered by his contract with plaintiff. When the patron returns, he puts his key into the lock, opens the door, and retrieves his property. After a patron has locked his locker by turning the key and removing

it, he cannot come back and open the locker and then close it again without inserting another coin, even though the twenty-four-hour period has not elapsed. Where a locker is occupied for more than twenty-four hours, plaintiff's employees remove the contents either to a hand-checking room in the area or to its own office, and the patron may retrieve his belongings by paying overtime charges.

Plaintiff seeks a declaration that the New York City sales tax is inapplicable to the above-described transactions. The complaint also seeks a refund of tax paid to the city on these transactions.

Although plaintiff subdivided its argument into three principal contentions, it is unnecessary to discuss more than one of them. The gist of the argument on that point is that the receipts from plaintiff's lockers are not receipts from " sales " of tangible personal property within the meaning of subdivision a (par. 1) of section N41–2.0 of the Administrative Code of the City of New York, which imposes a tax " upon the amount of the receipts from every sale of tangible personal property sold at retail ", and defines a sale as " Any transfer of title or possession or both, exchange or barter, license to use, license to consume, conditional or otherwise, in any manner or by any means whatsoever for a consideration, or any agreement therefor " (Administrative Code, § N41–1.0, subd. 5).

The purpose of the sales tax law is not to impose a tax on all transactions, but only on transactions which involve the passage or transfer of title (see Personal Property Law, § 82, for definition of sale), or transactions in which the actual, exclusive possession is transferred (cf. *Howitt* v. *Street & Smith Publications,* 276 N. Y. 345, 349). There can be no question here but that title to the lockers does not pass to the patrons.

Neither can there be said to be a transfer of actual physical possession of the lockers to the patrons. The lockers are physically and permanently attached to each other, having been manufactured so as to comprise a cabinet unit. The patron has no right to move any of the lockers. The city recognizes that there is no transfer of actual physical possession but maintains that constructive possession of the locker is delivered to the patron and that that is enough to warrant imposition of the tax. It is true, of course, that the patron may keep his baggage

in the locker for a period up to twenty-four hours and that during such period he may exclude all others from use of the locker. However, this is, at best, a limited type of constructive possession. The patron has the right only to lock and unlock the locker once during a period not in excess of twenty-four hours. After the door has been locked the patron may not open the locker without ending his right to its further use. If the transaction were one in which real, exclusive possession had been transferred, it seems to us that the patron would have the right or privilege of opening and closing the door as many times as he wished during the twenty-four-hour period.

The patrons of plaintiff's lockers bargain for the very same thing that the patrons of hand-checking rooms bargain for, viz., a safe place to store their baggage. In the place of the hand checker who stands guard over the baggage there is a steel door to perform that function. If a patron has not locked the door of his locker or has overstayed the twenty-four-hour period, the contents of his locker are removed and taken to the hand-check room by plaintiff's employees, where they are returned to the patron when called for. Where it becomes necessary to open a locker for repairs or other reasons, the contents are also removed to the hand-check room.

The comptroller has exempted from the sales tax, transactions whereby one delivers his baggage to a hand checker to be stored. Patrons of the plaintiff's lockers and of hand-checking rooms bargain for the same thing. In the case of the hand-checking service, an article is generally placed upon a rack and is not moved until called for by the patron, and generally it is not removed from the room in which it is checked. In both cases, the manner of storage is for the purpose of preventing strangers from having access to a checked article and is not for the purpose of excluding therefrom the respective employees of plaintiff or of the hand-checking room. The only real distinction between the two methods of rendering services is the semiautomatic nature of plaintiff's service, which is ordinarily rendered by means of the patron himself checking his baggage and removing it from storage, rather than by having an employee attend to it as in the case of the hand-checking service. The fact that plaintiff through its method of operation has eliminated the necessity of employees attending to the immediate wants of one

who wishes to check his baggage is not any ground of distinction for purposes of taxation.

Moreover, it was well said in *Gould* v. *Gould* (245 U. S. 151, 153): " In the interpretation of statutes levying taxes it is the established rule not to extend their provisions, by implication, beyond the clear import of the language used, or to enlarge their operations so as to embrace matters not specifically pointed out. In case of doubt they are construed most strongly against the Government, and in favor of the citizen. *United States* v. *Wigglesworth,* 2 Story, 369; *American Net & Twine Co.* v. *Worthington,* 141 U. S. 468, 474; *Benziger* v. *United States,* 192 U. S. 38, 55 ''. (See, also, *Matter of Holmes Elec. Protective Co.* v. *McGoldrick,* 262 App. Div. 514, affd. 288 N. Y. 635; *Matter of Brooklyn Union Gas Co.* v. *McGoldrick,* 270 App. Div. 186, 195, affd. 298 N. Y. 536; *Matter of Good Humor Corp.* v. *McGoldrick,* 289 N. Y. 452.)

The city maintains that the cases of *Matter of United Artists Corp.* v. *Taylor* (273 N. Y. 334) and *Buckley Funeral Homes* v. *City of New York* (199 Misc. 195, affd. 277 App. Div. 1096) are dispositive of this case. We do not agree. In the *United Artists* case (*supra*) we upheld the imposition of the sales tax upon the transfer by a distributor to an exhibitor of the possession of corporeal property in the form of positive and negative prints of photoplays with a license to use or exhibit them for a specified period. In the *Buckley* case (*supra*) the lower courts upheld the imposition of the sales tax upon rentals of automobiles by a funeral director from an auto renting agency for the purpose of transporting the families of deceased persons attending the funerals of such deceased persons. In both of those cases, unlike the present case, actual physical exclusive possession of the tangible personal property was transferred and remained under the apparently unfettered control of the licensee for a specified period of time.

The judgment of the Appellate Division and that of the Special Term should be reversed, with costs in all courts, and the matter remitted to Special Term for further proceedings in accordance with this opinion.

DESMOND, DYE, FULD, FROESSEL and VAN VOORHIS, JJ., concur; BURKE, J., taking no part.

Judgments reversed, etc.