Howard T. Hogan, J.
Petitioner has instituted a proceeding under article 13 of the Tax Law to review and strike from the rolls, the assessments made against it on the 1955-56 assessment roll of the Town of Riverhead, covering its alleged interest in certain real property lying in said town, owned by the United States but occupied by petitioner under a lease. Upon the return of said petition, the respondent moved that it be dismissed upon the ground that it failed to state facts sufficient to warrant such relief.
*341 It is the petitioner’s contention that it has absolutely no assessable or taxable interest whatsoever in the property involved. The court is called upon to determine whether the “ Supplemental Facilities Agreement ” between the petitioner and the United States of America brings it within the operation of subdivision 17 of section 4 of the Tax Law of the State of New York, which statute directs the taxation of the interest of a corporation in real property held under an agreement, ‘ ‘ whereby upon certain payment or payments the legal title is to be or may be acquired by such corporation ”.
The Supplemental Facilities Agreement was entered into on August 26,1954, under the authority of section 522a of title 34 of the United States Code. In form it is a lease of certain land and improvements owned by the Government, lying in the towns of Riverhead and Brookhaven, and constituting the Naval Industrial Reserve Aircraft Plant, D. O. D., No. 466.
Article X thereof is entitled 1 ‘ Improvements, Mobilization and Option to Purchase ” and reads as follows:
“ Article X — Improvements, Mobilization and Option to Purchase.
“ (a) In the event that the Facilities are determined to be excess to the further needs and responsibilities of the Department, and the Department elects to terminate this lease in accordance with the provisions of paragraph (d) of Article VII hereof, the Lessee shall have an option, which may be exercised by notice of intention to purchase delivered to the Department at any time during a period of ninety (90) days after receipt of notice of termination, to purchase the Facilities at their original cost to the Government less depreciation on improvements (exclusive of improvements financed by Lessee) at the rate of 3% per annum from the date of completion of the Facilities to the date notice of Lessee’s intention to exercise such option is received by the Government. Sale of the facilities to the Lessee shall, however, be subject to the Department obtaining all necessary authorizations and approvals required to enable it to sell the Facilities to the Lessee.
“ (b) In the event Lessee purchases the Facilities in accordance with paragraph (a) hereof, the Lessee hereby covenants and agrees that, for a period of twenty (20) years from the date of the deed which effects a transfer of said Facilities to the Lessee, it will maintain said Facilities in such condition that they will at all times be capable of producing military aircraft for the department within thirty (30) days after receipt by Lessee of a mobilization notice from the Department; and Lessee further agrees that such covenant may, at the option of the *342 Department, be made a part of the deed of conveyance from the Government.
“(c) The Lessee hereby covenants and agrees that, subject to and in accordance with the provisions of Article XI hereof, it will, within five (5) years from the date hereof, expend not less than $1,000,000 for the construction of additional buildings, structures or other improvements to the Facilities. In the event that this lease is terminated by either party prior to the expiration of the first five year term hereof, then the provisions of this paragraph (c) shall be of no force and effect; provided, hoioever, that if this lease is terminated during the first term hereof and the Facilities are sold to the Lessee in accordance with the provisions of paragraph (a) of this Article and Lessee at the date of the sale has not expended $1,000,000 for the construction of additional buildings, structures or other improvements to the Facilities, then the deed of conveyance to Grumman Aircraft Engineering Corporation shall contain a covenant on the part of Grumman Aircraft Engineering Corporation to carry out the provisions of this paragraph (c).”
It should be noted that the lessee is not granted an absolute option, but merely a right of first refusal when and if the Government elects to terminate the lease, and when and if the Navy Department obtains all necessary authorizations and approvals. These “necessary authorizations and approvals” have been described to the court by petitioner’s counsel as follows: “when a department that has jurisdiction of the property finds out that it is excess to its needs, it is then circulated amongst other departments of the government to see whether they have any use for it, and if none of them has any use for it, it then goes to the General Services Administration, which may dispose of it and usually disposes of it by referring it back to the department which had original jurisdiction and allows them to dispose of it. ’ ’
What the petitioner has, therefore, is simply a lease with a right of first refusal in the event that the landlord elects to, and can sell the leased premises.
The Congress of the United States has permitted State and local governments to tax such leases by enacting, in 1947, section 522e of title 34 of the United States Code, which provides that: “ § 522e Same [Lease of real or personal property]; State or local taxation; renegotiation of leases. The lessee’s interest, made or created pursuant to the provisions of sections 522a-522e and 522e of this title, shall be made subject to State or local taxation. Any lease of property authorized under the provisions of said sections shall contain *343 a provision that if and to the extent that such property is made taxable by State and local governments by Act of Congress, in such event the terms of such lease shall be renegotiated. ’ ’
In those States which permit the taxation of personal property, such a lease, as well as the conditional option, could be assessed and taxed without further ado. In New York, on the other hand, it is provided that ‘ ‘ personal property, whether tangible or intangible, shall not be liable to taxation locally for state or local purposes ”. (Tax Law, § 3.)
It is fundamental, however, that the Legislature may classify property for tax purposes in any manner it deems proper (People ex rel. Holmes Elec. Protective Co. v. Chambers, 1 Misc 2d 990). Has it classified the interest of this petitioner arising under the Supplemental Facilities Agreement in such manner as to make it taxable? Such classification, if in fact it has been made, must be found in the aforesaid subdivision 17 of section 4 of the Tax Law. This subdivision was enacted in 1925, 22 years prior to the partial relinquishment by the United States of its sovereign right to exemption from State and local taxation (U. S. Code, tit. 34, § 522e). Its pertinent provisions read as follows: " Whenever the legal title of real property is in the United States * * * but the use, occupation or possession thereof is in a corporation * * * or its * * * successor in interest, under a contract of sale or other agreement whereby upon certain payment or payments the legal title is to be or may be acquired by such corporation * * * its interest in such real property shall be assessed and taxed as real property subject to the provisions of this subdivision. íí * =» qvLle interest in any such property of the corporation * * * which * ® * is in the use, occupation or possession thereof, shall be assessed and taxed in the same manner as if said corporation * * * held the legal title to such property, except for the addition to the description of the words 6 interest under contract ’ * * ‘ * descriptive of the interest in the property so assessed. Such assessment shall be at the full value of such property without deduction therefrom on account of the whole or any part of the purchase price, or other sum due on such property, remaining unpaid.” (Italics added.)
Was the statute designed to make taxable an interest such as this petitioner’s or was it intended only to reach a vendee in possession under an executory agreement of sale, one who was the equitable owner of the premises but who would not receive legal title until a final payment had been made?
*344 It is to be interpreted in the light of the principle that ‘“A statute which levies a tax is to be construed most strongly against the government and in favor of the citizen. The government takes nothing except what is given by the clear import of the words used, and a well-founded doubt as to the meaning of the act defeats the tax.’ ” (Matter of Good Humor Corp. v. McGoldrick, 289 N. Y. 452, 455; see, also, RKO-Keith-Orpheum Theatres v. City of New York, 285 App. Div. 374.) And Chief Judge Conway of the Court of Appeals said, in the case of American Locker Co. v. City of New York (308 N. Y. 264): ‘' Moreover, it was well said in Gould v. Gould (245 U. S. 151, 153): ‘ In the interpretation of statutes levying taxes it is the established rule not to extend their provisions, by implication, beyond the clear import of the language used, or to enlarge their operations so as to embrace matters not specifically pointed out. In case of doubt they are construed most strongly against the Grovernment, and in favor of the citizen. United States v. Wigglesworth, 2 Story, 369; American Net & Twine Co. v. Worthington, 141 U. S. 468, 474; Benziger v. United States, 192 U. S. 38, 55 ’. (See, also, Matter of Holmes Elec. Protective Co. v. McGoldrick, 262 App. Div. 514, affd. 288 N. Y. 635; Matter of Brooklyn Union Gas Co. v. McGoldrick, 270 App. Div. 186, 195, affd. 298 N. Y. 536; Matter of Good Humor Corp. v. McGoldrick, 289 N. Y. 452.) ”
The mandate of the statute is that the assessment shall be at the full value of the property, without deduction for the unpaid portion of the purchase price. Such language hardly indicates an intent to confer upon a local taxing authority the power to impose upon a lessee under a five-year tenure, terminable at the will of the landlord, a tax based upon the full value of the leased property, merely because the lease contains a right of first refusal when and if the landlord decides to sell. The act does not provide for an assessment at the value of the lessee’s interest in the property, but for an assessment “ at the full value ” of the property itself.
Even if there were a reasonable doubt as to the effect of this language, it would have to be construed in favor of the taxpayer (Dun & Bradstreet, Inc., v. City of New York, 276 N. Y. 198, 204).
The respondent has offered several decisions which, it claims, support its position. In S. R. A., Inc., v. Minnesota (327 U. S. 558), the corporation was occupying the premises sought to be taxed under an executory contract of sale, under which it had obtained an equitable interest which would indefeasibly ripen into legal title when and if it completed the payments on account *345 of the purchase price. Instead of passing title subject to a purchase-money mortgage, the vendor (the United States) permitted the vendee to occupy the premises, but retained title until payments were completed. It was held that the State of Minnesota could tax the vendee’s equitable interest, so long as the right of the United States to repossess upon default remained paramount. The case at bar is clearly distinguishable by reason of the fact that this petitioner has no equitable ownership, nor even an absolute right to acquire ownership under an agreement of sale, but merely a right of first refusal if the owner should decide to sell.
In United States v. Woodworth (66 F. Supp. 641), it was held that Government owned property (in the State of New York) to the full extent of the Government’s interest therein, is immune from taxation, either as against the Government itself or as against one who holds as a bailee. The court added the following statement by way of dictum: ‘ ‘ The City and County did not undertake to levy taxes upon the interests of Eastman Kodak Company and Bausch and Lomb Optical Company [leases with conditional options to purchase from the United States] as they might possibly have done under Sec. 4, Subdivision 17 of the Tax Law, if the interests of said Corporations, as defendants contend, amounted to an interest ‘ under a contract of sale or other agreement whereby upon certain payment or payments, the legal title is to be or may be acquired by such corporation ’ ’ ’. (Italics supplied.) This is far from holding that such interests were, in fact, taxable.
In Dayton Development Fort Hamilton Corp. v. Boyland (133 N. Y. S. 2d 831), decided by Mr. Justice Ughetta, the United States leased real property in the City of New York to petitioners for a term of 75 years for the purpose of erecting housing units thereon. The lease further provided that title to all improvements constructed upon the premises by the lessees should remain in them, and that they might elect to remove such improvements upon the termination of the lease. These two circumstances, i.e., the 75-year term and the retention of title to improvements apparently formed the basis for the imposition of a real estate tax. The petitioner in the case at bar has no title of any nature to the improvements.
In People ex rel. Mergenthaler v. Mills (N. Y. L. J., July 6, 1951, p. 35, affd. 281 App. Div. 167), Mr. Justice Ughetta held that where the petitioner leased real property from the Defense Plant Corporation, one of the terms of the lease being that the lessee agreed to pay all taxes on it or upon the Defense Plant Corporation, and another being that the lessee could include *346 the amount so paid in the price it charged the United States for its height finders, and where, concededly, the Defense Plant Corporation was not vested with tax exemption, the fact that the United States, through delay or administrative oversight, failed to convey legal title to the Defense Plant Corporation for the first years of the lease, was no ground for exempting the petitioner from local taxation. To base exemption on such a mere technicality, he said, would be to exalt form over substance.
Alabama v. King & Boozer (314 U. S. 1) is authority only for the principle that when one contracts to sell or to manufacture for the United States Government on a ‘ ‘ cost-plus ’ ’ basis, the fact that any tax imposed upon the contractor will be paid indirectly by the United States, is no ground for exempting the contractor from taxation.
The Legislature may, if it sees fit, make this type of leasehold subject to local taxation at its fair value. The impact of a large operation such as this petitioner’s, accompanied by an influx of hundreds of workers and their families, can result in great and sudden hardship to an established community or school district. But until the Legislature does so in plain and unequivocal language, the court is constrained to apply the aforesaid statutory rules of construction to existing legislation, and to find that the tax sought to be imposed is unauthorized. Respondent’s motion to dismiss the petition under article 13 of the Tax Law accordingly, is denied. The petition is sustained and respondent will be directed to remove from its tax rolls, the assessment set forth therein.