In the Matter of SIN, Inc., Petitioner, v Department of Finance of the City of New York, Respondent.

First Department, March 31, 1987

### APPEARANCES OF COUNSEL

*Stephen R. Sugrue* of counsel *(Stephen S. Ziegler* with him on the brief; *Lowenthal Landau Fischer & Ziegler, P. C.,* attorneys), for petitioner.

*James F. Eller* of counsel *(Glenn Newman* and *Stanley Buchsbaum* with him on the brief; *Frederick A. O. Schwarz, Jr., Corporation Counsel,* attorney), for respondent.

### OPINION OF THE COURT

Asch, J.

Petitioner SIN, Inc. (SIN) operates a Spanish language television network and recording studio. The respondent Department of Finance of the City of New York assessed a deficiency of $98,503.28 in commercial rent tax against SIN for the tax years June 1, 1980 through May 31, 1983, based on expenditures by SIN during those years totaling $1,446,166 for improvements to its leased commercial space at 460 West 42nd Street in Manhattan, which the Department claimed constituted rent subject to the tax.

SIN entered into a lease on or about September 1, 1981, pursuant to which it leased a portion of the ground floor, the entire fourth floor and a portion of the roof of the premises located at 460 West 42nd Street in Manhattan. The lease was for 15½ years and provides that the property was being leased "as is". The agreed upon rental was $10 per square foot. Paragraph 41 of the rider to the lease states: "This lease is made with the understanding and agreement that Tenant will spend approximately $1,000,000.00 to improve, furnish, equip and/or alter the premises being let hereunder in accordance with plans and specifications to be approved by Landlord, as required under the within lease. It is a substantial consideration of landlord in renting the space to Tenant at the rental referred to herein that Tenant expend such minimum sum,

and failure to so improve the premises shall be deemed a substantial default on the part of Tenant."

Because the building was in very poor condition, SIN had to undertake massive reconstruction. During the tax period in question, SIN renovated one floor and added a floor to the roof which consisted of corporate offices and an atrium. As noted, the Department assessed a deficiency against SIN for commercial rent or occupancy tax based upon its inclusion, as taxable rent, of the $1,446,166 expended by SIN to improve the premises.

Petitioner, contending that the commercial rent tax law does not include payments required to be made by a tenant for expenses for capital improvements to the tenant's premises which are normally payable by a landlord, filed a petition for redetermination of the deficiency. It also contended that, even if the expenditures fell within the statutory definition of rent, these expenditures were not intended by the parties to the lease to constitute rent. At a hearing held thereafter, SIN presented testimony of oral and written negotiations between itself and the landlord which showed that the expenditures for improvements were not intended to constitute rent. SIN's president testified that SIN's proposal to pay rent at $10 per square foot was immediately accepted, and no further negotiations took place concerning rent. However, there were extensive negotiations which related to petitioner's desire for permission to sublet and the necessity, therefore, for extensive renovations to the leased premises.

The corporate officer of the landlord testified as to the negotiations concerning paragraph 41 and the fact that this improvement clause and a clause permitting SIN to sublet the premises at a higher rate were included *after* the $250,000 per year rental amount was fixed. The landlord's officer also testified that improvements could not have been made by the landlord, a not-for-profit corporation established to revitalize West 42nd Street, since it did not have sufficient resources. The Group Chief of the Department of Finance testified that the expenditures were reported as leasehold improvements in a statement submitted for audit purposes by SIN.

The Hearing Officer upheld the assessment, stating that the lease terms required SIN to expend $1,000,000 for improvements and that failure to do so would be deemed a substantial default under the lease. He found that the commitment to make improvements was a part of the bargained for considera-

tion for the use and occupancy of the premises and that the improvements were, therefore, subject to tax since they were permanent and inured to the landlord's benefit. Although, as noted, SIN had, over the objection of the Department of Finance, offered at the hearing parol evidence of the negotiations, the Hearing Officer did not consider this evidence, holding it was violative of the parol evidence rule and, therefore, inadmissible.

A final determination was issued by the Commissioner of the Department of Finance on March 13, 1986, and petitioner commenced this CPLR article 78 proceeding, which was transferred to this court pursuant to CPLR 7804 (g).

Section L46-1.0 (6) of the Administrative Code of the City of New York, renumbered section 11-701 (6), defines rent for purposes of commercial rent or occupancy tax as follows: "The consideration paid or required to be paid by a tenant for the use or occupancy of premises, valued in money, whether received in money or otherwise, including all credits and property or services of any kind and including any payment required to be made by him on behalf of his landlord for real estate taxes, water rents or charges, sewer rents or any other expenses (including insurance) normally payable by a landlord who owns the realty other than expenses for the improvement, repair or maintenance of the tenant's premises." Section L46-3.0 of the Administrative Code states that it is presumed that all premises are taxable premises, that all rent paid is base rent, and that the burden of proving that the base rent or any portion thereof which is not included in determining the measure of tax imposed shall be upon the tenant.

The parties agree that this statutory definition of rent is controlling. They also agree that the expenditures which were included in the final determination as taxable were for "improvements" to the leased premises.

However, the respondent Department of Finance contends that capital improvements which inure to the benefit of the landlord and which do not specifically relate to the business of the particular tenant making them are not included within the exclusionary language used in the statutory definition of rent. Although conceding that the word "improvements" used alone would be sufficiently ambiguous to include capital improvements, the respondent contends that the rule of *noscitur a sociis* should be applied and the meaning of the word "improvements" must be taken from the phrase "improve-

ment, repair or maintenance" read as a unit and in relation to each other. Since neither "repair" nor "maintenance" can be construed to cover capital improvements, "improvements" as used herein must solely refer to minor, nonstructural work which would not significantly increase the value of the landlord's property.

However, even when reading this phrase as a whole, each of the words used must have its own specific meaning. Thus, the Court of Appeals has noted "the obvious principle that where the Legislature has used different words in a series, the words should not be construed as mere redundancies". *(Feinstein v Bergner,* 48 NY2d 234, 239.) It is conceded by respondent that "repair" is work done to cure and restore premises to the status quo ante. "Maintenance" is work done to prevent and cure depreciation or to maintain the status quo *(Matter of Mobil Oil Corp. v Finance Adm'r of City of N. Y.,* 58 NY2d 95, 100). Improvements of property, however, is plainly not to maintain the status quo, but to make it better *(see, Matter of Ally & Gargano v Biderman,* 126 AD2d 354).

As a general rule, a statute which levies a tax is to be construed most strongly against the taxing authority and in favor of the taxpayer *(American Locker Co. v City of New York,* 308 NY 264, 269). However, a contrary presumption is true when a court interprets a statutory exclusion *(Matter of Mobil Oil Corp. v Finance Adm'r of City of N. Y., supra,* at 99). The language used, however, in the taxing statute is not abstruse or arcane but consists of everyday words signifying simple things. As we noted previously concerning another taxing statute: "These are not words of special or technical meaning but are common words 'Words of ordinary import are to be construed according to their ordinary and popular significance' (McKinney's Cons. Laws of N.Y., Book 1, Statutes, § 232) and a tax law should be interpreted as the ordinary person reading it would interpret it" *(Matter of Young v Gerosa,* 11 AD2d 67, 71-72). "Judicial construction or interpretation may be applied or availed of if doubt, obscurity or ambiguity exists in the statute. If, however, its meaning be clear and it contravenes no constitutional prohibition or limitation, explanation need not be attempted. Equitable considerations alone neither authorize nor warrant judicial legislation. The Legislature may correct the condition if it deems it necessary." *(Supra,* at 74.)

In its determination, the respondent relied on a Department of Finance opinion letter dated June 7, 1984 (4 NY Tax Rep

[CCH] ¶ 400-155) for its conclusion that the plain meaning of "improvement" in the statutory exclusion from rent of expenses for "improvement, repair or maintenance." refers to improvements of a minor nature made by a tenant at its will and solely for the tenant's own benefit, rather than capital improvements and alterations.

However, the clear language of the statute cannot be changed by an appeal to administrative expertise. Where "the question is one of pure statutory reading and analysis, dependent only on accurate apprehension of legislative intent, there is little basis to rely on any special competence or expertise of the administrative agency and its interpretive regulations are therefore to be accorded much less weight. And, of course, if the regulation runs counter to the clear wording of a statutory provision, it should not be accorded any weight." *(Kurcsics v Merchants Mut. Ins. Co.,* 49 NY2d 451, 459.)

*Matter of Mobil Oil Corp. v Finance Adm'r of City of N. Y. (supra)* is not to the contrary. There, the Court of Appeals affirmed the validity of assessing the commercial rent or occupancy tax against sums tenant paid for cleaning and janitorial services since the exclusion for "maintenance" expenses in the statute includes only work done to prevent and cure depreciation, not work done to maintain the cleanliness of the premises. In *Mobil,* moreover, there was evidence submitted of lease provisions providing for abatement of the rent in the event the tenant supplied its own cleaning service. Here, no rent abatement resulted from petitioner's agreement to make improvements. This further agreement for improvements only affected petitioner's right to sublet. This was clearly shown not only in the language of the lease, but upon direct testimony by both the landlord and petitioner as to what rent was required for the use and occupancy by petitioner and upon documentary evidence, including former drafts of the lease, which establishes no quid pro quo between the rent and petitioner's agreement to make improvements.

■ The respondent's exclusion of any consideration of the latter evidence under the parol evidence rule was erroneous. Generally, the parol evidence rule would be available for use only by one of the parties to this lease against another. However, where a third party is clearly intended to be the beneficiary of a contract, it may claim the benefit of the rule *(Oxford Commercial Corp. v Landau,* 12 NY2d 362, 365). Here, the agreement was obviously not entered into with the intent to benefit the Finance Department and, accordingly, the De-

partment should have considered the consistent, uncontroverted testimony of the parties to the lease agreement showing that the amount set forth for "mandatory improvement" in the lease was not in lieu of rent but in anticipation of petitioner's recoupment of such amount from rents received by subletting some of the improved space *(see, Matter of Debenhams, Inc. v Commissioner of Fin., N. Y. City,* 117 AD2d 344).

■ Accordingly, the application by petitioner SIN, Inc., in CPLR article 78 proceeding, transferred to this court by order of the Supreme Court, New York County (Beatrice Shainswit, J.), entered July 24, 1986, which seeks to review the final determination of the Commissioner of Finance, dated March 13, 1986, issued after hearing, assessing petitioner a tax deficiency under the New York City commercial rent tax in the total amount of $121,404.97, should be granted, on the law, to the extent of annulling the final determination of respondent, dated March 13, 1986, without costs or disbursements.

KUPFERMAN, J. P., ROSS, KASSAL and WALLACH, JJ., concur.

Petition for review of determination of respondent dated March 13, 1986, unanimously granted, on the law, to the extent of annulling the final determination of respondent, without costs and without disbursements.